

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-9-2004

# Duka v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3485

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Duka v. Atty Gen USA" (2004). *2004 Decisions.* Paper 138.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/138

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-3485
_____

ERVIN HARILLA DUKA,

Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL OF THE UNITED STATES; BUREAU
OF CITIZENSHIP AND IMMIGRATION SERVICES,

Respondents.

_____

On Petition for Review of an Order of Removal
from the Board of Immigration Appeals
U.S. Department of Justice
Executive Office for Immigration Review
(BIA No. A76-142-514)

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 27, 2004
_____

Before: NYGAARD, AMBRO and GARTH, <u>Circuit</u> <u>Judges</u>

(Opinion Filed: November 9, 2004)
_____

OPINION
_____

Garth, <u>Circuit Judge</u>:

Petitioner Ervin Harilla Duka challenges a final order of the Board of Immigration Appeals ("BIA") denying his application for asylum, for withholding of removal, and for protection under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252. We will deny Duka's Petition for Review.

**I.**

Because we write exclusively for the benefit of the parties, we will recount only those facts relevant to the issues before us. Duka is a native of Albania. He entered the United States on July 6, 1999, in possession of a passport that did not belong to him. Upon his arrival Duka indicated his intention to apply for asylum. Duka was interviewed at the airport by an INS official and referred for a "credible fear" interview.

On July 21, 1999, the INS conducted the credible fear interview. Duka was represented by counsel at the interview. During the interview Duka was asked whether he was a member of any tribe or ethnic group. In response, Duka stated, "I was not a member of the Democratic Party but I was involved in 1993 in the forum. I was a student. There was a group of students in the Democratic Party but I wasn't a member."

He later explained that he didn't join the student forum because he didn't like the person in charge of the group. Duka next testified that his father was also currently seeking asylum in the United States but that in Albania his father had worked for the government as an electrician. He further stated that his mother had worked in a

warehouse for the government. Duka also testified that after he finished high school he was in the army for a year and a half.

Duka then turned to a description of difficulties he and his family experienced in Albania. He stated that he was detained in a labor camp from 1982 through 1987. He explained that his family was detained because his father was "involved politically." He further testified that he participated in three demonstrations against the Socialist Party, in 1991, 1997 and 1998. Duka stated that in 1991 and 1997 he was beaten by police in connection with those demonstrations. He also testified that he was arrested after the 1997 and 1998 demonstrations.

On July 29, 1999, the INS issued a Notice to Appear charging Duka with fraud and removability under Sections 212(a)(6)(C)(I) & (a)(7)(A)(i)(I) of the INA, 8 U.S.C. §§ 1182(a)(6)(C)(i) and (a)(7)(A)(i)(I). Duka conceded removability but denied the fraud charge. He requested asylum, withholding of removal and protection under the CAT.

Duka was the sole witness at his asylum hearing, at which he recounted much of the testimony he gave at the credible fear interview. What follows are those portions of his oral testimony before the IJ that were different from his statements in the credible fear interview.

At the start of the hearing, Duka corrected several statements he had made at his credible fear interview. He testified that he was not in the army; that his father was an electrician but did not work for the government; and that his mother did not work in a

-2-

warehouse for the government. Duka explained that the inaccurate testimony was the result of the interpreter who was an Albanian from Kosovo and who allegedly had difficulties with the translation.

Duka claimed that after the Democratic Party was elected in Albania in 1992, he was a member of that party's youth forum. He explained that youth forum members were individuals who were not old enough to be official party members. Duka admitted that he did not have any documentation to corroborate his alleged membership.

Duka further testified that after the anti-government demonstration in 1997, he was arrested, subjected to force and interrogated about his father. He stated that he was beaten while in custody to the point that he had to be hospitalized, where he remained for two weeks. He claimed that he suffered a broken rib and severe temperature loss. On cross-examination, Duka admitted that he may have made a mistake in describing the part of his body that was injured. He also admitted that he had not mentioned the hospitalization in either his credible fear interview or his asylum application.

Duka then testified that, through an attorney, his mother obtained his medical records detailing his hospital stay. However, a consular report concluded that the document Duka submitted was a forgery. By way of explanation, Duka stated that he could not verify the validity of the document and could not get an affidavit from either the attorney or the doctor who had signed it, because both had left Albania and gone to Greece.

On cross-examination, Duka testified that he lives in Philadelphia with his father, mother and sister. According to Duka, his father was not present at the hearing because of poor health and because he did not want to appear before a judge in light of his own pending asylum case. None of Duka's family members provided affidavits in support of his application.

In an oral decision, the IJ determined that, based on his oral testimony, Duka qualified for asylum under the theories of political opinion and membership in a particular social group. However, the IJ concluded that Duka was not credible, and so denied Duka's application for asylum, withholding of deportation, and protection under the CAT.[1] The IJ found that there were significant contradictions between Duka's credible fear interview and his oral testimony. In particular, the IJ noted that Duka stated in his credible fear interview that he was not a member of the Democratic Party, but at the hearing Duka testified that he was in fact a member of the youth forum of that party. With respect to that inconsistency, the IJ observed:

> So, we have some inconsistencies in terms of the respondent's affiliation with the democratic party and that's crucial, that is a crucial point because if he's a member of the democratic party, this would put him in opposition to the communist government, get him to demonstrations, get him to where he is harmed, get him to where they would be arresting him and get him where he fears future harm.

The IJ found further that Duka submitted no evidence to corroborate his claim of party membership, in the form of either documentation or affidavits from family members.

---

[1] The IJ dismissed the fraud charge against Duka.

Thus, the IJ concluded that "[t]here is an abysmal failure of burden of proof here as to his democratic party affiliation."

The IJ then turned to the fraudulent hospital certificate. He noted that Duka had several months to rebut the finding that the document was a forgery but had proffered nothing to overcome that determination. Furthermore, the IJ rejected Duka's claim that he could not obtain an affidavit from the doctor who signed the certificate because the doctor was no longer in Albania. The IJ found his explanation unpersuasive because the consular report indicated that the doctor was still living in Albania as of July 2000, over a year after Duka left the country.

Finally, the IJ emphasized that the inconsistencies in Duka's testimony "could have all been easily cleared up by bringing in live witnesses, either the mother or the father or the sister, or at least, submitting a detailed affidavit from any of those people." The IJ found that Duka had not provided a "reasonable explanation" for the absence of such corroboration, particularly as his family was living in Philadelphia at the time of the hearing.

The BIA affirmed the IJ's decision without opinion. Duka timely filed this Petition for Review.

## II.

Where, as here, the BIA affirms the IJ's decision without opinion, the opinion of the IJ constitutes the final agency determination for purposes of our review. 8 C.F.R. §

1003.1(e)(4)(2003); *Dia v. Ashcroft*, 353 F.3d 228, 242 (3d Cir. 2003) (en banc).  We review adverse credibility determinations for substantial evidence.  *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir. 1998).  Under this deferential standard of review, we must uphold the credibility determination of the BIA or IJ unless any "reasonable adjudicator would be compelled to conclude the contrary."  8 U.S.C. § 1252(b)(4)(B).

For Duka to prevail, then, the evidence of credibility must be so strong in his favor that in a civil trial he would be entitled to judgment on the credibility issue as a matter of law.  *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) (holding that BIA's decision can be reversed only where petitioner's evidence "compels" a reasonable factfinder to find in his favor).  That said, adverse credibility determinations cannot be based on minor inconsistencies or admissions.  *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002).  Instead, "the discrepancies must involve the 'heart of the asylum claim.'."  *Id.* (citation omitted).

Furthermore, Duka has the burden of supporting his asylum claim through credible testimony of either past persecution or a well-founded fear of future persecution.  *Abdille v. Ashcroft*, 242 F.3d 477, 482 (3d Cir. 2001).  Credible testimony, even without corroboration, sometimes may be sufficient to meet this burden.  8 C.F.R. § 1208.13(a).  Our prior decisions make clear, however, that "the INS may require documentary evidence to support a claim, even from otherwise credible applicants, to meet their burden of proof."  *Gao*, 299 F.3d at 272 (*citing Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir.

2001)).

As an initial matter, we reject Duka's contention that the BIA failed to comply with its own regulations when it issued a summary affirmance in this case. We are bound by our recent decision in *Dia v. Ashcroft*, which upheld the constitutionality of the BIA's summary affirmance procedure.

With respect to the substantive merits of Duka's appeal, substantial evidence supports the IJ's determination that Duka failed to support his asylum claim with credible evidence. In reaching his conclusion, the IJ properly relied on the inconsistencies in Duka's testimony, the fraudulent document, and the failure to corroborate Duka's testimony through documentation or affidavits of family members.

Duka makes two principal arguments on appeal. First, he contends that the IJ should not have relied on the fraudulent medical certificate because the consular report that deemed it a forgery may not have been reliable. Second, Duka argues that the IJ should not have relied on the inconsistencies between his credible fear interview and oral testimony. Both contentions are without merit.

With respect to the credible fear interview, Duka relies on *Balasubramanrim,* in which this Court held that a credibility determination cannot be sustained solely upon an airport interview whose reliability was questionable. *See* 143 F.3d at 164. *Balasubramanrim*, however, involved an airport interview, not a credible fear interview. Furthermore, unlike the BIA in *Balasubramanrim*, the IJ here based his adverse

credibility determination on multiple grounds. Thus, Duka's reliance on *Balasubramanrim* is misplaced.

As for the forged medical certificate, Duka's unsubstantiated allegations on appeal as to the consular report's lack of reliability are irrelevant. Duka bears the ultimate burden of proving past persecution. Yet he offered no evidence before the IJ to contradict the report, despite having several months to marshal evidence that would rebut or explain the consular report. The IJ, on the other hand, gave specific and cogent reasons to support his adverse credibility determination. The record evidence does not compel a contrary conclusion.

**III.**

Inasmuch as the IJ's decision was supported by substantial evidence in the record, we will deny the Petition for Review.